IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00643-MEH

BLET GENERAL COMMITTEE OF ADJUSTMENT BNSF, former ATSF,
BLET GENERAL COMMITTEE OF ADJUSTMENT BNSF—MONTANA RAIL LINK, former
B&Q/GN/NP/SP&S,
BLET GENERAL COMMITTEE OF ADJUSTMENT BNSF, former &S/FW&D/CRI&P,

      Plaintiffs,

v.

BNSF RAILWAY COMPANY,

      Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiffs are three collective bargaining representatives for employees of Defendant BNSF

Railway Company. Plaintiffs brought this action as a result of Defendant's consolidation of

collective bargaining agreements ("CBAs") during the implementation of new interdivisional rail

service ("ID service"). In the present motion, Plaintiffs seek a status quo injunction requiring

Defendant to operate under the CBAs previously in effect while the parties engage in the Railway

Labor Act's ("RLA") arbitration process. According to Plaintiffs, I have jurisdiction to enter such

an injunction, because this a "major dispute" under the RLA. In a separate motion, Defendant seeks

to dismiss this case, because it involves only a "minor dispute."

      I hold that the present dispute is minor under the RLA. Defendant's actions were arguably

justified by the terms of the 1986 National Agreement the parties entered into, which Plaintiffs do

not dispute is part of the parties' CBAs. Accordingly, I grant Defendant's Motion to Dismiss, and

I deny Plaintiffs' Motion for a Status Quo Injunction.

**<u>BACKGROUND</u>**

Defendant is comprised of several former railroads that the Interstate Commerce Commission consolidated in 1996. Am. Compl. ¶ 5, ECF No. 11. Plaintiffs negotiate and administer CBAs with Defendant. *Id.* ¶ 4. Some of the CBAs and other labor agreements pertain to all of Defendant's employees, and others apply only on certain railroads. *Id.* ¶ 6.

In June 2017 Defendant notified Plaintiffs that it planned to establish ID service to operate rail lines between new locations. *Id.* ¶ 7. Defendant stated it was instituting this service pursuant to Article IX of the National Agreement, and that such service would be subject to the Colorado and Southern Railway ("C&S") CBA, regardless of whether the employees were previously governed by that agreement. *Id.*; ECF No. 20-3.[1] The National Agreement permits Defendant to serve a written notice proposing the conditions for new ID service. ECF No. 20-2. The service then operates on a trial basis until the parties complete arbitration. *Id.*

Plaintiffs subsequently informed Defendant that it could not replace the existing CBAs without obtaining their agreement. *Id.* ¶ 8. Although the parties engaged in negotiations, they did not resolve the dispute. *Id.* ¶ 9. In January 2018 Defendant unilaterally implemented the ID service on a trial basis and required all new railway lines to operate under the C&S CBA. *Id.* ¶ 10; Decl. of Milton H. Siegele ¶ 15, ECF No. 20-1. This allegedly caused many of Defendant's employees

---

[1] Because Defendant seeks to dismiss this case for lack of subject matter jurisdiction, I may consider evidence beyond the allegations in the Amended Complaint. *See Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) ("Where a party attacks the factual basis for subject matter jurisdiction, the court does not presume the truthfulness of factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts."); *Bhd. of R.R. Signalmen v. Connex R.R., LLC*, 184 F. Supp. 4d 645, 647–48 (N.D. Ill. 2016) (considering evidence beyond the complaint in determining whether the dispute is major or minor).

to undergo lower wage rates, loss of their profit-sharing plan, loss of their 401(k) employer match, changes in layover time and pay, and changes in job assignments and work schedules. Am. Compl. ¶ 10.

As a result, Plaintiffs filed suit on March 19, 2018. Compl., ECF No. 1. In their Amended Complaint, Plaintiffs assert Defendant violated the RLA's "major dispute provisions" by making changes to rates of pay and working conditions without performing the required procedures. Am. Compl. ¶¶ 23–27. Additionally, Plaintiffs allege Defendant violated various labor agreements between the parties, including the *New York Dock* conditions, the Cramdown Agreement, and the North Loop Agreement. *Id.* ¶¶ 13–21. Generally, these agreements require Defendant to follow certain procedures when modifying CBAs. *Id.*

On March 27, 2018, Plaintiffs filed the present Motion for a Status Quo Injunction, ECF No. 16. Plaintiffs seek to restore the CBAs previously in effect at least until the parties complete the formal arbitration process. *Id.* According to Plaintiffs, an injunction is proper, because Defendant's authority to unilaterally change the CBAs is a major dispute under the RLA. *Id.* at 3–8.

On April 17, 2018, Defendant responded to Plaintiffs' motion and contemporaneously filed the present Motion to Dismiss. Resp. to Mot. for Injunction, ECF No. 21; Mot. to Dismiss, ECF No. 19. Defendant's response and motion argue that I lack subject matter jurisdiction to decide this case, because it involves only a minor dispute. Resp. to Mot. for Injunction 4–7; Mot. to Dismiss 12–19. According to Defendant, the plain language of the National Agreement arguably permits it to unilaterally determine working conditions on a trial basis when establishing ID service. Mot. to Dismiss 12–14. Additionally, Defendant relies on the parties' past practices and relevant arbitration awards as support for its authority to make the disputed changes. *Id.* at 14–16.

On May 11, 2018, Plaintiffs filed a reply in support of their request for an injunction and a response to Defendant's motion. Reply in Supp. of Mot. for Injunction, ECF No. 27; Resp. to. Mot. to Dismiss, ECF No. 28. Plaintiffs primarily rely on a recent arbitration award, which held that the National Agreement does not permit a different carrier to unilaterally change existing CBAs. Resp. to Mot. to Dismiss 5–8. According to Plaintiffs, this arbitration award "expose[s] [Defendant's] position as 'frivolous or obviously insubstantial' . . . ." *Id.* Defendant filed a Reply in Support of its Motion to Dismiss on May 25, 2018, ECF No. 29.

## ANALYSIS

The parties' motions seek resolution of same question—is Defendant's authority to use the C&S CBA for its consolidated rail lines a major or minor dispute? If the dispute is major, I have jurisdiction to require Defendant to use the prior CBAs until the parties complete the "lengthy process of bargaining and mediation" the RLA requires. *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n (Conrail)*, 491 U.S. 299, 302–03 (1989). If this is a minor dispute, I lack jurisdiction over it, and the issue must be determined by the National Railroad Adjustment Board ("NRAB"). *Id.* at 304 ("The Board (as we shall refer to any adjustment board under the RLA) has exclusive jurisdiction over minor disputes."). I find that this case involves a minor dispute.

In determining whether disputes are major or minor, courts look to whether the carrier seeks to create contractual rights or merely enforce them. *Id.* at 302. Major disputes relate to "the formation of collective bargaining agreements or efforts to secure them." *Id.* (quoting *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723 (1945)). In contrast, minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994) (quoting *Bhd. of R.R. Trainmen v. Chi.*

*River & Ind. R.R. Co.*, 353 U.S. 30, 33 (1957)).  The "distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing agreement." *Conrail*, 491 U.S. at 305.

A carrier "bears a 'relatively light burden' in establishing exclusive jurisdiction in the Adjustment Board under the RLA." *Bhd. of Maint. of Way Emps. Div. v. Burlington N. Santa Fe Ry. Co.*, 596 F.3d 1217, 1223 (10th Cir. 2010) (quoting *Conrail*, 491 U.S. at 307)).  In fact, "a party need only show that the contested action is 'arguably justified' by the terms of the collective bargaining agreement." *Id.* (quoting *Conrail*, 491 U.S. at 304–05).  An action is arguably justified by the CBA "if it even remotely touches on the terms of the relevant collective bargaining agreement." *Id.*  As the Supreme Court explained in *Conrail*,

> [I]f an employer asserts a claim that the parties' agreement gives the employer the discretion to make a particular change in working conditions without prior negotiation, and if that claim is arguably justified by the terms of the parties' agreement (i.e., the claim is neither obviously insubstantial or frivolous, nor made in bad faith), the employer may make the change and the courts must defer to the arbitral jurisdiction of the Board.

491 U.S. at 310.

Here, I find that Article IX of the National Agreement arguably gives Defendant discretion to designate which CBA will apply to new ID service on a trial basis.  Article IX, which Plaintiffs do not contest is part of the parties' CBAs, provides in relevant part:

### Section 1 - Notice

> An individual carrier seeking to establish interdivisional service shall give at least twenty days' written notice to the organization of its desire to establish service, specify the service it proposes to establish and the conditions, if any, which it proposes shall govern the establishiment [*sic*] of such service.

## Section 2 - Conditions

Reasonable and practical conditions shall govern the establishment of the runs described, including but not limited to the following:

(a) Runs shall be adequate for efficient operations and reasonable in regard to the miles run, hours on duty and in regard to other conditions of work.

(b) All miles run in excess of the miles encompassed in the basic day shall be paid for at a rate calculated by dividing the basic daily rate of pay in effect on May 31, 1986 by the number of miles encompassed in the basic day as of that date. . . . .

(c) When a crew is required to report for duty or is relieved from duty at a point other than the on and off duty points fixed for the service established hereunder, the carrier shall authorize and provide suitable transportation for the crew. . . .

* * * * *

(e) In order to expedite the movement of interdivisional runs, crew on runs of miles equal to or less than the number encompassed in the basic day will not stop to eat except in cases of emergency or unusual delay. For crew on longer runs, the carrier shall determine the conditions under which such crews may stop to eat. . . .

* * * * *

## Section 3 - Procedure

Upon the serving of a notice under Section 1, the parties will discuss the details of operation and working conditions of the proposed runs during a period of 20 days following the date of the notice. If they are unable to agree, at the end of the 20-day period, with respect to runs which do not operate through a home terminal, . . . such run or runs will be operated on a trial basis until completion of the [arbitration] procedures referred to in Section 4.

ECF No. 20-2, at 3–4.

It is at least arguable based on this text that Defendant permissibly designated which CBA will apply to its new ID service. Indeed, Article IX specifically permits carriers to propose "reasonable and practical conditions" for new ID service, which govern on a trial basis until the

parties complete the formal arbitration procedure.  Although the NRAB may find that Defendant could not alter the existing CBAs in this manner or that the new conditions are unreasonable, Defendant's position that Article IX permitted its action is not "obviously insubstantial or frivolous . . . ."[2]  *Conrail*, 491 U.S. at 310.

Relevant case law supports this finding.  In *International Association of Sheet, Metal, Air, Rail & Transportation Workers v. BNSF Railway Co.* (*Smart TD*), the court held, and the Ninth Circuit agreed, that BNSF's authority to make alterations to existing collective bargaining agreements was a minor dispute in light of Article IX's express language.  No. C15-1270RSL, 2015 WL 5159201, at *1–2 (W.D. Wash. Aug. 24, 2015), *aff'd*, 650 F. App'x 914 (9th Cir. 2016) (unpublished).  According to the court, Article IX arguably "authorizes [] the establishment of ID service with working conditions that differ from the prevailing operations . . . ."  *Id.* at *1.  Although BNSF did not entirely replace the CBAs in that case, the Supreme Court has stressed that the magnitude or significance of the change is irrelevant to the major/minor dispute determination. *Conrail*, 491 U.S. at 305 ("[T]he formal demarcation between major and minor disputes does not turn on a case-by-case determination of the importance of the issue presented or the likelihood that it would prompt the exercise of economic self-help.").  Furthermore, the court in *Smart TD* did not find that Article IX gave the carrier discretion to make only minor changes to the existing CBAs. Indeed, Article IX's language is not so limited.  Without discussing the magnitude of the changes, the court agreed with the carrier that Article IX arguably authorizes the establishment of working

---

[2] To be clear, I do not find that the parties' agreements permit Defendant's actions.  Indeed, that issue is reserved for the NRAB.  *See, e.g.*, *Conrail*, 491 U.S. at 304 (stating that the Board has exclusive jurisdiction over minor disputes).  I find only that Defendant's argument based on Article IX is not frivolous.

conditions that differ from existing CBAs. *Smart TD*, 2015 WL 5159201, at *2. I find *Smart TD* persuasive to my present analysis, and I agree with its holding.

Although not as factually similar as *Smart TD*, the Third Circuit's statement in *Railway Labor Executives' Ass'n v. Pittsburgh & Lake Erie Railroad Co.*, supports a finding that the present case involves a minor dispute. 845 F.2d 420, 428 (3d Cir. 1988), *rev'd on other grounds*, 491 U.S. 490 (1989) (without analyzing whether the dispute was major or minor, holding that the RLA did not authorize the district court to enjoin the sale of the carrier's assets). In that case, the union challenged the carrier's authority to sell its assets and eliminate jobs without the union's consent. *Id.* at 425–26. In holding that the dispute was major, the court found it important that "[t]here is no argument about whether the collective bargaining agreement itself permits or prohibits the proposed sale." *Id.* at 428 n.9. According to the court, "[i]f *that* were the crux of the dispute, then this case would require an interpretation of the agreement, and would thus be a minor dispute, to be resolved by arbitration." *Id.* Here, the crux of the dispute is whether the language of the CBA (Article IX) permits Defendant to institute all working conditions when establishing ID service. Therefore, this case requires an interpretation of the parties' agreements, and this is a minor dispute.

To rebut Defendant's argument, Plaintiffs primarily rely on an arbitration award holding Article IX could not be used to impose working conditions that "run counter to the parties' other existing agreements." Resp. to Mot. to Dismiss 6, ECF No. 28; ECF No. 27-2, at 27–28. According to Plaintiffs, this award "thoroughly undermines [Defendant's] position that its actions are supported by an 'arguable contractual justification.'" Resp. to Mot. to Dismiss 8. As an initial matter, "[d]ecisions by arbitrators offer no precedential value and are not binding on federal courts." *Air Line Pilots Ass'n Int'l v. E. Air Lines, Inc.*, 683 F. Supp. 845, 853 (D.D.C. 1988), *rev'd on other*

*grounds*, 869 F.2d 1518 (D.C. Cir. 1989); *Int'l Bhd. of Elec. Workers v. CSX Transp., Inc.*, 369 F. Supp. 2d 982, 987 (N.D. Ill. 2005) ("[A]rbitration awards are of no precedential value in a district court."). This is especially true, because the award did not involve Defendant.

Furthermore, it does not follow from this single arbitration panel's determination that Defendant's contractual justification is frivolous. The award itself demonstrates the arbitrators based their decision on the meaning of the parties' agreements, which makes this a minor dispute. *See Hawaiian Airlines, Inc.*, 512 U.S. at 253 (stating that minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." (quoting *Bhd. of R.R. Trainmen*, 353 U.S. at 33)). Indeed, the arbitrators quote Article IX and analyze the meaning of the quoted sections. ECF No. 27-2, at 29–31. To be sure, the NRAB may agree with the arbitrators' holding and find that Article IX does not grant Defendant the authority to replace CBAs. However, the validity of Defendant's action is not presently before me. I must determine only whether Defendant's interpretation of Article IX is frivolous or obviously insubstantial. I find that it is not.

Plaintiffs argue in passing that the CBAs and other labor agreements altered the National Agreement, because the parties entered into them after the National Agreement. Resp. to Mot. to Dismiss 14. Additionally, it is not entirely clear that the CBAs incorporated the National Agreement. However, these issues are also minor disputes regarding the language of the CBAs. *See United Transp. Union v. S.C. Pub. Ry. Comm'n*, 130 F.3d 627, 633 (4th Cir. 1997) (holding that a dispute as to whether an agreement incorporated all future national agreements was minor).

To be sure, this is a close call. Defendant altered employees' CBAs, and courts have consistently stated that disagreements over changes to the terms of existing CBAs are major

disputes. *See, e.g.*, *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.-Airline Div. & Teamsters Local 19 v. Sw. Airlines Co.*, 875 F.2d 1129, 1133 (5th Cir. 1989) ("Major disputes involve proposals for new agreements or for changes in existing agreements."). Additionally, it appears that one or more agreements between the parties requires Defendant to follow certain procedures to alter a CBA. ECF No. 16-10, at 5; ECF No. 16-4. However, Article IX gives Defendant authority to propose, and institute on a trial basis, working conditions for ID service. ECF No. 20-2. When faced with a close call based on conflicting terms such as this, courts must construe disputes as minor. *Gen. Comm. of Adjustment v. CSX R.R. Corp.*, 893 F.2d 584, 591 (3d Cir. 1990) ("[I]n close cases, disputes are characterized as 'minor.'"); *Bhd. of Maint. of Way Emps. Div.*, 596 F.3d at 1223 ("'[W]hen in doubt,' the courts are to 'construe disputes as minor.'" (alteration in original) (quoting *Bhd. of Locomotive Eng'g v. Atchison, Topeka, & Santa Fe Ry. Co.*, 768 F.2d 914, 920 (7th Cir. 1985))). Thus, because Article IX arguably gives Defendant discretion to alter existing CBAs on a trial basis, this dispute is minor.

## CONCLUSION

In sum, I find that Article IX of the National Agreement arguably permits Defendant to replace existing CBAs on a trial basis when it is establishing new ID service. Accordingly, this case involves a minor dispute, which is subject to the exclusive jurisdiction of the NRAB. Accordingly, I dismiss this case for lack of jurisdiction. Defendant's Motion to Dismiss [filed April 17, 2018; ECF No. 19] is **granted**. Plaintiffs' Motion for Status Quo Injunction [filed March 27, 2018; ECF No. 16] is **denied**. The Clerk of the Court is directed to close this case.

Entered and dated at Denver, Colorado, this 6th day of June, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge